STEVE ELZINGA, OSB #123102
Marion County Counsel
*selzinga@co.marion.or.us*
MICHELLE TEED, OSB #994398
Sr. Assistant Legal Counsel
*MTeed@co.marion.or.us*
555 Court Street N.E., Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
Attorney for County of Marion

*Of Attorneys for Plaintiff Marion County*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **MARION COUNTY,** a Political Subdivision of the State of Oregon,<br><br>Plaintiff,<br><br>v.<br><br>**U.S. ARMY CORPS OF ENGINEERS, DANIEL P. DRISCOLL,** in his official capacity as Secretary of the Army, and **WILLIAM H. GRAHAM, JR.**, in his official capacity as Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers.<br><br>Defendants. | **Case No.**<br><br>**COMPLAINT**<br>**(For Violations of the APA)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Page **1** of **29** – COMPLAINT

Marion County (herein "Marion County" or "Plaintiff") alleges as follows:

**<u>INTRODUCTION</u>**

1.

The Secretary of the Army, the Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers, and the U.S. Army Corps of Engineers (collectively "Army Corps" or "Defendants") have violated federal law by failing to submit a report on turbidity in the Willamette Valley, Oregon by the January 4, 2026 statutory deadline set by Congress.

2.

For over four months, the Army Corps has been in ongoing violation of the deadline set by Congress in federal law.

3.

Marion County seeks to compel the Army Corps to comply with federal law and complete the turbidity report.

4.

The Army Corps is currently evaluating plans for partial draining of Detroit Lake[1] and published a draft Supplemental Environmental Impact Statement (SEIS).

5.

Congress required the Army Corps to evaluate lessons learned from turbidity problems caused by a similar draining of nearby Green Peter Lake.

---

[1] The Army Corps uses the term "deep drawdown" instead of "draining." This lawsuit uses the two terms synonymously.

Page **2** of **29** – COMPLAINT

6.

The Army Corps proposed draining Detroit Lake to such a low level that there is a significant, if not nearly certain, risk of having insufficient water for municipal uses such as providing drinking water and water for fighting fires, as well as agricultural, recreational, and environmental uses.

7.

The dangerously low level to which the Army Corps has proposed draining Detroit Lake would harm water quality.

8.

The dangerously low level to which the Army Corps has proposed draining Detroit Lake will cost downstream cities like Stayton and Salem millions of dollars in infrastructure repairs/upgrades.

9.

The public comment period on the SEIS started November 14, 2025 and ended January 13, 2026.

10.

Due to the anticipated effects of the proposed draining, the analysis that is part of the legally required turbidity study would have also informed the SEIS and public comments on the SEIS.

11.

If the Army Corps had followed federal law and published the required turbidity report by the January 4, 2026 statutory deadline, the public would have had an opportunity to evaluate that report and submit comments to the Army Corps about how the proposed Detroit Lake

Page **3** of **29** – COMPLAINT

draining would be impacted by the turbidity report.

12.

By violating federal law, the Army Corps blocked fully informed public comments.

13.

This action seeks to ensure that the public, including Marion County, has the same public comment rights that would have been available if the Army Corps had followed federal law.

14.

This action seeks court intervention to pause efforts to drain Detroit Lake until the Army Corps completes the turbidity report required by federal law and allows informed public comments.

## JURISDICTION AND VENUE

15.

Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the National Environmental Policy Act, 42 U.S.C. §4321 *et seq.* An actual, justiciable controversy exists between the parties, and the requested relief is therefore proper under 5 U.S.C. §§ 701-06.

16.

Venue is proper in the Eugene Division of this district under 28 U.S.C. § 1391(b)(2), (e)(1) and LR 3-2(a)(3) because the violations and the resources at issue occur in this judicial district. Both Marion County and Detroit Lake are in this division.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

17.

The federal government waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

18.

Plaintiff, Marion County, has been adversely affected or aggrieved by the process the Army Corps used to open and close the comment period on its draft SEIS; *to-wit* it has not completed the required turbidity study and therefore foreclosed Marion County's, and others' ability to comment based on the study. Under 5 U.S.C. § 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereto."

## PARTIES

19.

Plaintiff Marion County has standing to be a party to this lawsuit. Marion County is located in the Willamette Valley, Oregon and includes Detroit Lake. Detroit Lake is associated with the Detroit Dam constructed and operated by the Army Corps, as part of the Army Corps' Willamette Valley System.

20.

Marion County and its residents have deep and long-standing specific interests in protecting and enjoying Detroit Lake and the Santiam River, including safeguarding water quality, recreation, and the environment, which interests are harmed by Defendants' actions and inactions challenged herein.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

21.

Defendant U.S. ARMY CORPS OF ENGINEERS is an agency or instrumentality of the United States, under the U.S. Department of Army and the Department of Defense, and owns, operates, and maintains the Willamette Project, which includes the Detroit Dam that protects Detroit Lake and the Santiam River.  The Corps maintains an office in Portland, Oregon that serves as the headquarters of the Northwest Division, which includes the Portland District and four other districts in the United States.  The Portland District of the Army Corps is responsible for Endangered Species Act consultation concerning the Willamette Project.  The Army Corps is sued for non-monetary relief under the Administrative Procedures Act.

22.

Defendant U.S. ARMY CORPS OF ENGINEERS is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

23.

Defendant DANIEL P. DRISCOLL is sued only in his official capacity as Secretary of the Army responsible for overseeing the Army Corps and implementing various statutory duties, including duties established by Sections 1002 and 1205(b) of Thomas R. Carper Water Resources Development Act of 2024 (S. 4367).

24.

Defendant WILLIAM H. GRAHAM, JR. is sued only in his official capacity as Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers responsible for overseeing the Army Corps and implementing various statutory duties, including duties established by Sections 1002 and 1205(b) of Thomas R. Carper Water Resources Development Act of 2024 (S. 4367).

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

25.

The Secretary of the Army is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

26.

The Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

**GENERAL ALLEGATIONS**

**A. Importance of Detroit Lake to Marion County**

27.

Marion County has a population of over 340,000 residents, all of whom need access to a reliable, safe water supply.

28.

Many Marion County residents recreate on or around Detroit Lake via boating, fishing, and camping.

29.

According to a presentation by the Army Corps, Detroit Lake is the number one or number two recreation reservoir in the state of Oregon.

30.

The Santiam River flowing from Detroit Lake is a critical source of water supply for many water uses located in Marion County, including the City of Salem, the City of Stayton, and agricultural irrigators.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

31.

According to the Army Corps' own data, in fiscal year 2024, there were 32,917 visits to Detroit Lake, including 5,458 picnickers, 2,575 swimmers, 9,088 walkers/hikers/joggers, 151 boaters, 20,909 sightseers, 6,021 anglers, 3,862 special event attendees, and 2,234 others.

32.

In fiscal year 2024, visitation to Detroit Lake resulted in $1,204,903 in visitor spending within 30 miles of Detroit Lake, $893,326 in sales, 7 jobs, $326,591 in labor income, and $430,156 in value added within 30 miles of Detroit Lake. These categories each comprise or lead to revenue in or for Marion County.

33.

Much of the area within 30 miles of Detroit Lake is in Marion County.

34.

Many of the businesses related to visitor spending, sales, jobs, labor, and added value within 30 miles of Detroit Lake are in Marion County.

35.

In fiscal year 2024, visitation to Detroit Lake resulted in $274,515 in National Economic Development Benefits.

36.

In fiscal year 2024, with multiplier effects, visitor trip spending related to Detroit Lake resulted in $1,494,041 in total sales, 10 jobs, $533,380 in labor income, and $757,679 in value added (wages and salaries, payroll benefits, profits, rents, and indirect business taxes).

Page **8** of **29** – COMPLAINT

37.

Money spent by visitors to Detroit Lake on trip expenses adds to the local and national economies by supporting jobs and generating income.

38.

Visitor spending represents a sizable component of the economy in many communities around Detroit lake, which are in Marion County.

39.

The Army Corps has recognized that, by providing opportunities for active recreation, Detroit Lake helps combat one of the most significant of the nation's health problems: lack of physical activity. Recreational programs and activities at Detroit Lake also help strengthen family ties and friendships; provide opportunities for children to develop personal skills, social values, and self esteem; and increase water safety.

40.

Recreation experiences increase motivation to learn more about the environment; understanding and awareness of environmental issues; and sensitivity to the environment.

41.

Detroit Lake recreation generates many thousands of dollars of impact for individuals, businesses, and local governments in Marion County.

**B. Harms from Draining Detroit Lake: Reduced Water Quality and Access**

42.

Many Marion County residents, including residents of the Cities of Salem and Stayton, obtain their drinking water from the Santiam River that flows out of Detroit Lake.

Page **9** of **29** – COMPLAINT

43.

Many Marion County residents obtain water for agricultural irrigation from the Santiam River that flows out of Detroit Lake.

44.

When the Detroit Lake's water level is reduced too far during the winter, as the Army Corps has proposed, a below-average rainfall will result in water levels that are too low to provide needed water for municipal, industrial, agricultural, and recreational uses in following months.

45.

As of April 16, 2026, the federal National Oceanic and Atmospheric Administration (NOAA) National Weather Service Climate Prediction Center forecast that seasonal precipitation in November 2026 to January 2027 will be below normal in the Willamette Valley.

46.

The federal Environmental Protection Agency (EPA) recognizes that high turbidity is "often associated with higher levels of disease-causing microorganisms such as viruses, parasites and some bacteria. These organisms can cause symptoms such as nausea, cramps, diarrhea, and associated headaches." *See* https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations

47.

Increased turbidity significantly affects and reduces the quality of the human environment, in particular water quality.

48.

Increased turbidity has negative environmental impacts.

Page **10** of **29** – COMPLAINT

49.

Water flows from the Santiam River into the Detroit Lake Reservoir and then flows back into the Santiam River.  A deep drawdown or draining of Detroit Lake will result in significant volumes of silt moving through the Detroit Dam and into the Santiam River, which causes increased turbidity downstream.

50.

Increased turbidity is a reasonably foreseeable environmental effect of any deep drawdown or draining of Detroit Lake.

51.

Multiple jurisdictions in Marion County use slow sand filtration, including the cities of Salem and Stayton.

52.

Slow sand filters are highly impacted by increased turbidity.

53.

The draining of Detroit Lake proposed in the draft SEIS would damage sand filters, especially since the fine silt of a deep drawdown or draining is more damaging to slow sand filters than the larger particles of temporary storm-created turbidity.

54.

The deep drawdown or draining of Detroit Lake proposed in the draft SEIS would significantly increase the total collective costs to local governments in Marion County.  These costs are expected to be millions of dollars to repair, replace, or find alternative water sources. More importantly, preparations will take more time than proposed in the SEIS – *i.e.* full preparations cannot be completed by the fall of 2026.

Page **11** of **29** – COMPLAINT

55.

For example, the City of Stayton has a slow sand filter that can be temporarily closed during temporary storm events with high turbidity because the City's water system usually has around three days' worth of water storage. However, the Army Corps' proposal for an extended deep drawdown or draining lasting longer than a few days could not be handled with reserve water and would force the city to either spend significant funds that it does not have or turn off municipal water.

56.

The draft SEIS does not include any assurance of monitoring for turbidity at a location far enough upstream from municipal water uses such that a deep drawdown or draining could be paused for unacceptable turbidity (i.e. in pool monitoring).

57.

Failure of any of the North Santiam potable water systems can be and must be avoided – recovery of damaged water systems takes months, at extreme costs, and must be part of the SEIS impacts analysis.

**C. Harms from Draining Detroit Lake: Fish Death**

58.

The deep drawdown or draining of Green Peter Lake resulted in thousands, if not millions, of fish dying due to barotrauma.

59.

The deep drawdown or draining of Green Peter Lake resulted in thousands, if not millions, of fish being flushed out of the lake.

Page **12** of **29** – COMPLAINT

60.

A deep drawdown or draining of Detroit Lake will result in many fish dying due to barotrauma.

61.

A deep drawdown or draining of Detroit Lake will result in many fish being flushed out of the lake.

62.

The harm that a deep drawdown or draining of Detroit Lake will have for fish will also create cascading harms to the broader ecosystem.

**D. Harms from Draining Detroit Lake: Reduced Recreation**

63.

A deep drawdown or draining of Detroit Lake will reduce visitation to and recreation around Detroit Lake.

64.

A deep drawdown or draining of Detroit Lake will reduce the monetary impact of recreation in Marion County.

65.

A deep drawdown or draining of Detroit Lake will reduce fishing in the lake and the Santiam River below Detroit Lake.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

66.

A deep drawdown or draining of Detroit Lake will result in reduced revenue to Marion County from county park camping spots along the Santiam River impacted by lower river levels and fish death.

**E. Harms from Draining Detroit Lake: Financial Harm to Residents, Businesses, and Local Governments**

67.

A deep drawdown or draining of Detroit Lake will harm the Santiam Canyon communities in Marion County who are still recovering from the 2020 Labor Day wildfires.

68.

Marion County has current or recent grants to support development in the Santiam Canyon cities of Idana, Detroit, Gates, and Mill City. Each of these cities is impacted by any changes to the Santiam River, and thus also by any deep drawdown or draining of Detroit Lake. The City of Detroit is especially harmed by any deep drawdown or draining of Detroit Lake. Any deep drawdown or draining of Detroit Lake reduces the benefit of Marion County's financial investment.

69.

Marion County has already, and continues, to spend resources planning a trail project along the Santiam River with the goal of improving tourism in the Santiam Canyon. Any deep drawdown or draining of Detroit Lake would undermine the impact of this project and harm Marion County's financial investment.

Page **14** of **29** – COMPLAINT

70.

Marion County has already, and continues, to spend resources planning a North Fork recreation plan with the goal of improving tourism in the Santiam Canyon. Any deep drawdown or draining of Detroit Lake would undermine the impact of this project and harm Marion County's financial investment.

71.

Marion County spends money through its Community Prosperity Initiative to support cities around the county. For the past few years, this program has made available direct financial support of $20,000 per year available to the city of Stayton, to be used for city development priorities.

72.

A deep drawdown or draining of Detroit Lake will reduce recreational and economic activity in Marion County near the Detroit Lake area.

73.

Reduced recreational and economic activity in the Detroit Lake area will harm businesses in Marion County and reduce the value of those businesses. This will reduce or slow the growth of values for business property, equipment, and other personal property, which in turn will result in less property tax revenue for Marion County and other local governments.

74.

A deep drawdown or draining of Detroit Lake will harm agricultural irrigation in Marion County.

75.

Page **15** of **29** – COMPLAINT

A deep drawdown or draining of Detroit Lake endangers irrigation water access and thus all agricultural activities that depend on such irrigation.

76.

Marion County is one of the top agricultural counties in Oregon, with agricultural product sales of $874.6 million in 2022.

77.

Marion County's interests in protecting and enjoying Detroit Lake and the Santiam River are being directly harmed by Defendants' actions and inactions.

78.

Unless the relief prayed for is granted, Marion County's above-described interests will be adversely affected and irreparably injured by Defendants' violations of law.

79.

Delay of a deep drawdown or draining of Detroit Lake would reduce harms to Marion County.

**F. Thomas R. Carper Water Resources Development Act of 2024**

80.

Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) was signed into law on January 4, 2025 by the President after passing by overwhelming bipartisan margins in both the House (399 votes in favor; 18 against) and Senate (97 votes in favor; 1 against). It is now Public Law No: 118-272. https://www.congress.gov/bill/118th-congress/senate-bill/4367

81.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

Sections 1002 and 1205(b) of Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) required the Secretary of the Army to submit, to the Committee on Transportation and Infrastructure of the House of Representatives and the Committee on Environment and Public Works of the Senate a turbidity report "[n]ot later than 1 year after the date of enactment of this Act." Upon submission to Congress, the turbidity report would also be available to the public.

82.

The S. 4367 Section 1205(b) report on turbidity in the Willamette Valley, Oregon was due on January 4, 2026.

83.

The Secretary of the Army did not timely submit the turbidity report required by S. 4367 Section 1205(b) and still has not submitted the report months later.

84.

Under S. 4367 Section 1205(b), the Army Corps' report was required to address:

- "instances of high turbidity in a reservoir in the Willamette Valley resulting from a drawdown in the reservoir;"

- "identify and report instances during the 10-year period preceding the date of enactment of this Act in which turbidity concerns have arisen following a drawdown at a reservoir in the Willamette Valley, including Foster Lake and Green Peter Lake;"

- "report on turbidity monitoring that the Secretary performs during drawdowns to identify, and if necessary correct, turbidity issues;"

Page **17** of **29** – COMPLAINT

- "provide a summary of turbidity monitoring records collected during drawdowns with respect to which turbidity concerns have been raised by the public, including a comparison between turbidity prior to a drawdown, during a drawdown, and following refilling;"
- "identify lessons learned associated with turbidity resulting from drawdowns and indicate how changes based on those lessons learned are being implemented;" and
- "identify opportunities to minimize monetary strains on non-Federal entities caused by increased turbidity levels."

85.

Had the Army Corps completed and provided the turbidity study by the statutory deadline, more fully informed comments on the SEIS could have been provided on significant concerns, possible improvements, and alternative options.

## G. National Environmental Policy Act

86.

Under 42 U.S. Code § 4332(2)(C), all federal actions "significantly affecting the quality of the human environment" must include "a detailed statement" on "reasonably foreseeable environmental effects of the proposed agency action" among other things.

87.

Congress passing a law requiring a report evaluating the turbidity impacts of the Green Peter deep drawdown or draining demonstrates that increased turbidity is a reasonably foreseeable result of any deep drawdown or draining in the Willamette Valley System.

Page **18** of **29** – COMPLAINT

88.

Since increased turbidity has environmental impacts and Congress required a relevant turbidity report, that report will address effects that are "reasonably foreseeable," especially considering lessons from the recent deep drawdowns at nearby Green Peter Lake.

89.

Under NEPA, the Army Corps may not complete the SEIS without evaluating all "reasonably foreseeable environmental effects," which means that the Army Corps may not complete the SEIS prior to completing the turbidity report required by Congress.

90.

The general public must have the opportunity to review and comment on draft Environmental Impact Statements and Supplemental Environmental Impact Statements.

91.

A federal agency must consider alternatives to a proposed action. This necessarily includes consideration of all substantive comments and conducting further analysis if necessary.

92.

When announcing the SEIS, Army Corps stated that "Public input is the cornerstone of success when we're working with projects that impact our communities;" "Comments will help us better understand how the proposed changes in the SEIS may affect communities, the environment, and reservoir users;" "We're moving quickly to complete this study and ensure we're meeting our obligations, while also considering potential impacts to communities;" and "We encourage everyone to participate in the public comment period and help us make informed decisions about the future management of the Willamette Valley dams." *See*

Page **19** of **29** – COMPLAINT

https://www.nwp.usace.army.mil/Media/News-Releases/Article/4332270/public-invited-to-comment-on-draft-study-of-detroit-reservoir-deep-drawdown-pot/

93.

Under NEPA, the Army Corps may not complete the SEIS without evaluating all "reasonably foreseeable environmental effects," which means that the Army Corps may not complete the SEIS prior to considering public comments informed by the turbidity report required by Congress.

**H. Administrative Procedure Act**

94.

The Administrative Procedure Act confers a right of judicial review on any person that is adversely affected by a federal agency action. 5 U.S.C. § 702. Upon review, the court shall "hold unlawful and set aside agency actions . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). The APA defines "agency action" to include a "failure to act." *Id.* §§ 551(13), 701(b)(2). A reviewing court also shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF: VIOLATION OF THE APA**
**Action Unlawfully Withheld or Unreasonably Delayed**
**(Thomas R. Carper Water Resources Development Act of 2024 (S. 4367))**

95.

Marion County realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

Page **20** of **29** – COMPLAINT

96.

In accordance with the APA, a court must "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

97.

An "agency action" "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 701(b)(2); 5 U.S. Code § 551(13).

98.

Defendants' decision not to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) by the statutory deadline constitutes a final agency action, which is reviewable under the APA.

99.

Failure to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) for months past its statutory deadline is an agency action unlawfully withheld or unreasonably delayed in violation of the APA.

100.

Failure to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) before the conclusion of the comment period for the SEIS is an agency action unlawfully withheld or unreasonably delayed in violation of the APA.

101.

Marion County has been harmed by this failure and unreasonable delay, in that it, along

Page **21** of **29** – COMPLAINT

with others, is not able to provide fully informed comments on the draft SEIS.  Nor has the Army

Corps been able to complete the in-depth analysis of the available alternatives, as required under

federal law.

102.

If the Army Corps had followed federal law and published the required turbidity report

by the January 4, 2026 statutory deadline, the public would have had nine days to consider the

report and provide public comments before the end of the SEIS public comment period on

January 13, 2026.

103.

On January 6, 2026, Marion County asked the Army Corps to voluntarily extend the

public comment deadline for the draft SEIS until the turbidity report was complete, but the Army

Corps declined to do so.

104.

The Court should order the Army Corps to complete and publish the turbidity report

required by federal law and then either (1) allow a reasonable amount of additional time (at least

nine days) for the public to review and submit comments on the draft SEIS based on the turbidity

report or (2) revise the draft SEIS based on the turbidity report and then open a new public

comment period based on the revised draft SEIS.

**SECOND CLAIM FOR RELIEF: VIOLATION OF THE APA**
**Action that is Contrary to Law**
**(Thomas R. Carper Water Resources Development Act of 2024 (S. 4367))**

105.

Marion County realleges and incorporates by reference all previous paragraphs as if fully

set forth herein.

Page **22** of **29** – COMPLAINT

106.

In accordance with the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

107.

Failure to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) for months past its statutory deadline is an agency action contrary to law in violation of the APA.

108.

Failure to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) before the conclusion of the comment period for the SEIS is an agency action contrary to law in violation of the APA.

109.

The Court should order the Army Corps to complete and publish the turbidity report required by federal law and then either (1) allow a reasonable amount of additional time (at least nine days) for the public to review and submit comments on the draft SEIS based on the turbidity report or (2) revise the draft SEIS based on the turbidity report and then open a new public comment period based on the revised draft SEIS.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

**THIRD CLAIM FOR RELIEF: VIOLATION OF THE APA**
**Action that is Arbitrary and Capricious**
**(Thomas R. Carper Water Resources Development Act of 2024 (S. 4367))**

110.

Marion County realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

111.

In accordance with the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

112.

Failure to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) for months past its statutory deadline is an agency action that is arbitrary and capricious in violation of the APA.

113.

Failure to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) before the conclusion of the comment period for the SEIS is an agency action that is arbitrary and capricious in violation of the APA.

114.

The Court should order the Army Corps to complete and publish the turbidity report required by federal law and then either (1) allow a reasonable amount of additional time (at least nine days) for the public to review and submit comments on the draft SEIS based on the turbidity

Page **24** of **29** – COMPLAINT

report or (2) revise the draft SEIS based on the turbidity report and then open a new public comment period based on the revised draft SEIS.

### FOURTH CLAIM FOR RELIEF: VIOLATION OF THE APA
### Action that is an Abuse of Discretion
### (Thomas R. Carper Water Resources Development Act of 2024 (S. 4367))

115.

Marion County realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

116.

In accordance with the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

117.

Failure to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) for months past its statutory deadline is an agency action that is an abuse of discretion in violation of the APA.

118.

Failure to timely complete the turbidity report required by Sections 1002 and 1205(b) of the Thomas R. Carper Water Resources Development Act of 2024 (S. 4367) before the conclusion of the comment period for the SEIS is an agency action that is an abuse of discretion in violation of the APA.

119.

The Court should order the Army Corps to complete and publish the turbidity report required by federal law and then either (1) allow a reasonable amount of additional time (at least

Page **25** of **29** – COMPLAINT

nine days) for the public to review and submit comments on the draft SEIS based on the turbidity report or (2) revise the draft SEIS based on the turbidity report and then open a new public comment period based on the revised draft SEIS.

### FIFTH CLAIM FOR RELIEF: VIOLATION OF THE APA
#### Action Unlawfully Withheld or Unreasonably Delayed
#### (NEPA (42 U.S.C. § 4321))

120.

Marion County realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

121.

The Court may review NEPA claims under Section 706(1) of the APA.  5 U.S.C. § 706(1).  The Court may "compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing how it shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004) (internal quotations and emphasis omitted).

122.

Under Section 706(1) of the APA, Plaintiffs must only assert that the Army Corps failed to take an action that it is required to take.

123.

The Army Corps had a clear legal mandate to complete the turbidity study by a given date, and it has not done so.  The Army Corps has offered no sufficient substantive explanation for its failure, let alone an explanation that would support a reasonable delay.

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

124.

Under NEPA, the Army Corps may not complete the SEIS without evaluating all "reasonably foreseeable environmental effects," which means that the Army Corps may not complete the SEIS prior to completing the turbidity report required by Congress and allowing public comments based on that turbidity report.

125.

The Court should order the Army Corps to complete and publish the turbidity report required by federal law and then either (1) allow a reasonable amount of additional time (at least nine days) for the public to review and submit comments on the draft SEIS based on the turbidity report or (2) revise the draft SEIS based on the turbidity report and then open a new public comment period based on the revised draft SEIS.

## SIXTH CLAIM FOR RELIEF: *ULTRA VIRES*
### Action That Is Beyond the Scope of the Army Corps' Authority (*Ultra Vires*)

126.

Marion County realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

127.

In accordance with the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . not in accordance with law." 5 U.S.C. § 706(2)(A).  In essence, an agency may act only within the bounds of its authority.

128.

The Army Corps was required to, and in fact did, prepare a draft SEIS for public comment.  However, it is required to allow for fully informed public comment.

Page **27** of **29** – COMPLAINT

Marion County Legal Counsel
555 Court Street NE · P.O. Box 14500 · Salem, OR 97309
Telephone: 503-588-5220

129.

It was not within the Army Corps' authority to fail to complete the turbidity study by the statutory deadline set by Congress.

130.

It is not within the Army Corps' authority to complete the SEIS prior to providing the turbidity study and allowing public comment informed by the study.

131.

The Court should order the Army Corps to complete and publish the turbidity report required by federal law and then either (1) allow a reasonable amount of additional time (at least nine days) for the public to review and submit comments on the draft SEIS based on the turbidity report or (2) revise the draft SEIS based on the turbidity report and then open a new public comment period based on the revised draft SEIS.

PRAYER FOR RELIEF

WHEREFORE, Marion County respectfully requests the entry of judgment against the Army Corps and that the following relief be granted:

A. Compel Defendants to complete, provide to the specified Congressional committees, and further consider the turbidity study and impacts thereof, including the impact on various alternatives on a timeframe that is reasonably practicable;

B. Prohibit Defendants from finalizing the SEIS prior to completing the turbidity report required by Congress.

C. Compel Defendants to reopen the public comment period, for a reasonable amount of time, on the draft SEIS after the turbidity study is made publicly available;

Page **28** of **29** – COMPLAINT

D.  Award attorney fees and costs to the Plaintiff pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412;

E.  Award discretionary costs; and

F.  Such further relief as the Court deems just and proper to provide relief to Plaintiff and to protect the public interest.

Dated this 13th day of May, 2026

/s/Steve Elzinga

STEVE ELZINGA, OSB #123102
Of Attorneys for Marion County
555 Court Street NE, Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
E-Mail: selzinga@co.marion.or.us

MICHELLE TEED, OSB #994398
Of Attorneys for Marion County
555 Court Street NE, Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
E-Mail: MTeed@co.marion.or.us

Page **29** of **29** – COMPLAINT