Jennifer L. Gates, OSB No. 050578
jgates@pearllegalgroup.com
Heather C. Doherty, OSB No. 244304
htourgee@pearllegalgroup.com
Pearl Legal Group PC
529 SW Third Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 445-7101
**Counsel for Intervenor-Plaintiff City of Stayton**

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| MARION COUNTY, a Political Subdivision of the State of Oregon,<br>Plaintiff,<br>v.<br>U.S. ARMY CORPS OF ENGINEERS, DANIEL P. DRISCOLL, in his official capacity as Secretary of the Army, and WILLIAM H. GRAHAM, JR., in his official capacity as Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers,<br>Defendants. | Case No. 6:26-cv-00956-MTK (Lead Case)<br>Case No. 6:26-cv-01381-MTK (Trailing Case)<br><br>**CITY OF STAYTON'S MOTION TO INTERVENE AND MEMORANDUM OF LAW IN SUPPORT** |
| CITY OF SALEM, an Oregon Municipal Corporation,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA, and UNITED STATES ARMY CORPS OF ENGINEERS, an agency of the United States government,<br>Defendants. | |

**LR 7-1(A) CERTIFICATION**

Counsel for Intervenor-Plaintiff City of Stayton certify that they conferred with counsel for Plaintiffs, Defendants and Defendant-Intervenors in both of the above-captioned cases concerning the relief requested in this motion. Plaintiffs do not oppose the motion. Defendants and Defendant-Intervenors reserve their position.

**MOTION**

Pursuant to Federal Rule of Civil Procedure 24, the City of Stayton moves to intervene as a Plaintiff in both of the above-captioned cases. The City of Stayton seeks intervention in Case No. 6:26-cv-00956-MTK in order to enjoin the planned deep drawdowns of Detroit Reservoir until Defendants have complied with the Administrative Procedure Act, 5 U.S.C. §§ 701-706 , the Thomas R. Carper Water Resources Development Act of 2024, S. 4367 ("WRDA")the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq* ("NEPA"), the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA"), , and the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* ("ESA"), and to obtain a declaratory judgment that Defendants are in violation of those statutes.

The City of Stayton seeks intervention in Case No. 6:26-cv-01381 in order to enjoin the planned deep drawdowns of Detroit Reservoir until Defendants have complied with the Administrative Procedure Act, 5 U.S.C. §§ 553, 701-706, the Thomas R. Carper Water Resources Development Act of 2024, S. 4367 ("WRDA"), the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq* ("NEPA"), and the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA").

In support of its motion to intervene, the City of Stayton has filed its proposed complaints in each of the above-captioned actions concurrently herewith.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

**MEMORANDUM OF LAW IN SUPPORT**

## I. INTRODUCTION

Plaintiff Marion County filed this action on May 13, 2026. Plaintiff seeks injunctive relief enjoining Defendants from carrying out the planned drawdown of Detroit Reservoir until they comply with numerous provisions of federal law, including by completing the required turbidity report and allowing informed public comment, in violation of the Administrative Procedure Act ("APA"). First Amended Compl. at ¶¶ 1-16 (hereinafter, "Marion County FAC"). On July 8, 2026, the City of Salem ("Salem") filed a similar complaint in this District Court, seeking declaratory and injunctive relief for Defendants' alleged violations of the APA, related to largely the same conduct; namely, failure to properly consider and analyze the impacts of a deep drawdown at Detroit Reservoir. Compl. at ¶¶ 1-18, *City of Salem v. United States et al.*, No. 6:26-cv-1381-MTK, ECF No. 1 (hereinafter, "Salem Compl."). The cases were consolidated on August 11, 2026.

The City of Stayton ("Stayton") is an Oregon municipal corporation located within Marion County, Oregon. It is located along, and draws its municipal water supply from, the North Santiam River, downstream from Detroit Dam and Detroit Reservoir.[1] It has a total population of approximately 8,244. The median household income is approximately $72,000. Nearly all of its residents rely on Stayton's municipal water supply. The City of Sublimity (population 2,697) also relies on Stayton's water treatment system, because it disposes of its wastewater through Stayton's wastewater system, which also relies on the proper functioning of

[1] "Detroit Reservoir" or "Detroit Lake" refers to the reservoir that exists as a result of the impoundment of the North Santiam River upstream of the Detroit Dam.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

Stayton's water treatment system. Stayton's water treatment system relies on the use of direct online slow sand filters (SSF), which are vulnerable to increases in turbidity.

Defendants in this action, the U.S. Army Corps of Engineers ("Corps") and two of its officials, operate the Detroit Dam as part of the Willamette Valley System ("WVS"), a constellation of 13 dams in the region. The Corps has announced deep drawdowns[2] of Detroit Reservoir beginning in fall 2026.[3]

The planned deep drawdowns of Detroit Reservoir will displace a high volume of fine suspended sediments into the North Santiam River, which will travel downstream. The amount of sediment expected to be released into the North Santiam River, over the duration expected during deep drawdown would likely disable Stayton's filtration infrastructure. If the filter is disabled, the system cannot operate, either while it is cleaned (a process that can take weeks) or while it is replaced. This stands to leave Stayton's residents, businesses, healthcare facilities, and critical public infrastructure without access to a clean, safe water supply.

Stayton now seeks to intervene in this action to protect its legal interests in the outcome and to raise an additional claim with respect to deep drawdowns. For the reasons that follow, it is entitled to intervene in this action as a matter of right under Federal Rule of Civil Procedure 24(a) ("Rule 24(a)") or, in the alternative, should be permitted to intervene under Federal Rule of Civil Procedure 24(b) ("Rule 24(b)").

---

[2] A "deep drawdown" refers to the process by which the dam's lower regulator outlets are opened, lowering the elevation of the reservoir and causing more water to pass through the dam structure than typical operations usually allow.

[3] *See* Willamette Valley System Operations and Maintenance Final Supplemental Environmental Impact Statement (May 22, 2026), available at https://publibrary.sec.usace.army.mil/api/download?id=1b9ef053-ad16-47ff-e47b-7fbdcffc20f4&filename=WVS_Final_SEIS_May2026.pdf; Record of Decision for Willamette Valley System Operations and Maintenance Final Supplemental Environmental Impact Statement at 10 (June 23, 2026), available at https://publibrary.sec.usace.army.mil/api/download?id=9726a545-fc77-46c4-91f1-833dd65560c4&filename=ROD_Willamette_Valley_OM_Supplemental_EIS_23_June_2026.pdf.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

## II. BACKGROUND

The Corps has owned and operated the Willamette Valley System since the 1940s, and the Detroit Dam since 1949. The thirteen dams that comprise the WVS provide flood control, recreation opportunities, tourism, and hydroelectricity for the benefit of residents of the Willamette Valley. Importantly, the presence of the dams has enabled consistent, predictable volumes of water to flow into the Willamette Valley's rivers, including the North Santiam, which are the source of clean and safe drinking water for the region's cities, including for Stayton.

Deep drawdowns of Detroit Reservoir were one measure that the Corps was ordered to implement in *Northwest Environmental Defense Center, et al. v. United States Army Corps of Engineers, et al.*, No. 3:18-cv-00437-HZ (D. Or. filed Mar. 13, 2018) (hereinafter, "*NEDC*"). Stayton was not a party to that case, and while it appears that increases in turbidity were at least noted in those proceedings, there is nothing in the record that indicates the court required the Corps, in implementing the required measures, to consider the effect of that turbidity on municipal drinking water systems.

In November 2025, the Corps published a Draft Supplemental Environmental Impact Statement ("Draft SEIS") for the operation and maintenance of the Willamette Valley System. The Draft SEIS acknowledged that downstream water systems may be adversely affected by deep drawdowns of Detroit Reservoir, but did not specifically consider the impacts of the deep drawdowns on the specific and unique conditions in the North Santiam Basin, and on the communities that draw from the North Santiam River and their infrastructure. Stayton submitted comments on the Draft SEIS on January 2026 voicing those concerns, and requesting that the Corps delay the deep drawdown of Detroit Lake until 2028, to allow Stayton the time needed to address the known turbidity issues, all of which take significant time and resources to implement.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

The Corps issued its Final Supplemental Environmental Impact Statement for Willamette Valley System Operations and Maintenance ("Final SEIS") in May 2026. The Final SEIS fails to carry out the analyses suggested by Stayton—the very types of analysis that federal law mandates. Specifically, instead of completing the required turbidity report, the Final SEIS makes only passing, generic reference to turbidity concerns.. What little analysis of turbidity the SEIS does provide fails to consider the specific impacts of increased turbidity in the specific context of the North Santiam basin. Of particular relevance to Stayton, the Final SEIS provides no discussion of how elevated turbidity levels (of differing particle sizes) over any significant duration may impact municipal water facilities that use direct online SSFs, which are particularly sensitive to even slight increases in turbidity, and no mechanism in the contemplated Emergency Response and Communications Plan for municipalities like Stayton to directly contact the Corps to halt a drawdown if it risks immobilizing its water treatment facilities.

## III. LEGAL STANDARDS

### A. Intervention as of Right

Rule 24(a) provides that courts must allow a party to intervene in an action in which it claims an interest where the disposition of that action "may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. Proc. 24(a)(2). The Ninth Circuit has broken these requirements into a four-part test to determine if a party has shown that it is entitled to intervene as a matter of right: (1) the motion must be timely; (2) the would-be intervenor has a "significantly protectable interest" in the subject of the action; (3) the disposition of the action would impair or impede the would-be intervenor's ability to protect that interest; and (4) the interest is not adequately



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

represented by the current party to the action. *Sweet v. Cardona*, 121 F.4th 32, 47-48 (9th Cir. 2024), *quoting Kalbers v. United States Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021).

The first factor, timeliness, is determined by evaluating (1) the stage of the proceeding at which intervention is sought; (2) any prejudice to other parties that would result from the intervention; and (3) the reason for and length of delay. *Id.* at 48. While no fixed formula for timely intervention exists, a general rule is that a party should move to intervene "as soon as he knows or has reason to know that his interests may be adversely affected by the outcome of the litigation." *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) (internal citation omitted).

As for the second factor, a "significantly protectable interest" exists where (1) the party seeking to intervene "asserts an interest that is protected under some law," and (2) "there is a relationship between its legally protected interest and the plaintiff's claims." *Sweet*, 11 F.4th at 48.

The "impair or impede" factor is satisfied if disposition of the claims would actually affect the applicant, "or if it *may* lead to a practical impairment of its interests." *Cooper v. Newsom*, 26 F.4th 1104, 1115 (9th Cir. 2022), *quoting United States v. City of Los Angeles*, 288 F.3d 391, 398, 401 (9th Cir. 2002).

Finally, the adequacy of representation requirement is met if the proposed intervenor can meet its "minimal" burden to show that the representation of his interest *may* be inadequate. *Kalbers*, 22 F.4th at 828, *quoting Legal Aid Soc. Alameda Cnty. v. Dunlop*, 618 F.2d 48, 50 (9th Cir. 1980) (emphasis in *Kalbers*). Specifically, courts consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

> make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect.

*City of Los Angeles*, 288 F.3d at 398.

Each of the above-described factors should be interpreted "broadly in favor of intervention," *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998), and courts should be "guided primarily by practical and equitable considerations," *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

### B. <u>Permissive Intervention</u>

Rule 24(b) governs permissive intervention. A court may, in its discretion, permit a party to intervene where that party makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Proc. 24(b)(1). The court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* at 24(b)(3); *Cooper*, 13 F.4th at 868. Permissive intervention may be especially appropriate where, for example, "the presence of intervenors would assist the court in its orderly procedures leading to resolution of [the] case," and particularly where the case "impact[s] large and varied interests." *Cahill Ranches, Inc. v. Bureau of Land Management*, No. 1:21-cv-01363-CL, 2021 WL 1167872 at *4 (D. Or. Dec. 10, 2021), *quoting Kootenai Tribe v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).

## IV. <u>ARGUMENT AND AUTHORITIES</u>

### A. <u>The Court should allow the City of Stayton to intervene as of right.</u>

Stayton is entitled to intervene in these consolidated actions as a matter of right because it meets the standard under Rule 24(a) as a party whose ability to protect its interests stand to be impaired or impeded as a result of the disposition of these claims, where the existing parties will inadequately represent that interest.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

**1. Stayton's motion is timely.**

Stayton's motion is timely because the proceedings are still at an early stage and no dispositive legal rulings have been made. Further, it has filed its proposed Complaint in each action alongside the motion. At this early juncture, none of the existing parties will be prejudiced by the fact of intervention. Additionally, Stayton submitted comments to the Corps on January 12, 2026, thereby lodging its concerns with Defendants at the earliest possible stage. There has been no delay in filing; indeed, Stayton intervened as soon as it had reason to know that its interests may be adversely affected by the outcome of this litigation and that the potential effects of the drawdown would not be mitigated. *Cf. Oregon*, 913 F.2d at 589.

According to the docket, the cases were consolidated and another motion to intervene was granted on August 11, 2026. The first status conference is not scheduled to take place until August 18, 2026. Plaintiff Marion County has filed a motion for preliminary injunction, but as of the date of filing this motion, a briefing schedule has not been identified on the docket.

For these reasons, Stayton's intervention is timely.

**2. Stayton has significantly protectable interests in the outcome of the action.**

The City of Stayton is solely responsible for the maintenance and operation of its water treatment facilities, including the filtration infrastructure that will be destroyed if the deep drawdowns occur as currently contemplated in the Final SEIS. Stayton is responsible for the delivery of clean, safe drinking water to its over 8,000 residents (as well as the over 2,000 Sublimity residents who rely on the continued functioning of Stayton's wastewater facilities), healthcare facilities, schools, and public safety infrastructure), a mandate that will be all but impossible to carry out when Stayton's filtration systems are destroyed by the suspended sediments that the deep drawdowns will unleash. For example, Stayton is home to Santiam



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

Hospital & Clinics, which provide hospital and clinic-based care to over 60,000 patients a year and employs over 700. Decl. of Margaret Hudson in Support of the City of Stayton's Motion to Intervene at ¶ 7. The hospital system uses approximately 20,000-30,000 gallons of water per day, which it receives from Stayton. *Id.* at 8. If water services are cut off, the system cannot operate; it is dependent on clean water for drinking water, hygiene, cleaning, sanitation, and fire suppression. *Id.* at 10-12. Closure of Santiam Hospital even for just a few days would require patients to travel to Salem, or even further, to receive care. *Id.* at 13.

Stayton also has a property interest in the SSF system that will be destroyed. Stayton's comments on these topics went unconsidered in the Final SEIS.

These interests are protected by the APA in multiple respects. First, the APA requires that federal agencies do not take actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), which encompasses a requirement not to violate, as relevant here, NEPA, the WRDA, the CWA, and the ESA. Second, an agency must give interested persons an opportunity to participate through the submission of written comments, and must consider those comments. *Id.* § 553(c). Finally, courts may compel agencies to act when action has been "unlawfully withheld or unreasonably delayed." *Id.* at § 706(1). Accordingly, Stayton has a "significantly protectable interest" in the disposition of this action, as required by Rule 24(a).

**3. Stayton's ability to protect its interests will be impeded by the disposition of these claims.**

The Final SEIS's lack of specific discussion of the impacts of—let alone possible mitigation measures for—deep drawdowns on cities on the North Santiam River places Stayton's water treatment facilities in unique peril. As currently planned, the deep drawdowns will result in a total cessation of potable water delivery and will destroy city-owned infrastructure. The



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

outcome of this litigation, which seeks to enjoin the deep drawdown until these impacts and mitigation are fully studied and addressed with specific reference to cities and facilities downstream of the Detroit Dam like Stayton's will actually impede Stayton's ability to protect its significant interests in not only its property, but also in its responsibility to deliver water to its residents.

**4. Stayton's interests are not adequately protected by Marion County or the City of Salem.**

Stayton's interests are not likely to be adequately represented by Marion County or Salem for several reasons. First, Stayton's property stands to be destroyed by small increases in turbidity. Stayton must intervene if it is going to protect its interests in its infrastructure. Additionally, Stayton's infrastructure is uniquely vulnerable, not only because of the specific type of SSF system it uses, but because its proportionally smaller tax base makes capital investments in new infrastructure (whether in the form of replacement filters or alternate systems) much more challenging; it is less resilient to the kind of catastrophic damage the deep drawdowns are likely to cause. Likewise, Stayton does not have in place an alternative source for water.

While current Plaintiff City of Salem is also a municipal water provider, it is not clear that it will make all of the same arguments as Stayton. First, Stayton's SSF system is a "direct online" system, meaning that it does not use pretreatment systems, unlike the City of Salem's system. Stayton's system is thus uniquely vulnerable to small amounts of turbidity.

Second, Salem's water treatment system is larger, and while the North Santiam river is its "primary" drinking water source, it has at least a limited backup source of drinking water. *See* Salem Compl. at ¶ 128. Stayton, on the other hand, does not have backup supplies of water unaffected by turbidity in a drawdown, a fact which may lead Stayton to make different



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

arguments with respect to the relief sought and what specific issues it believes the Corps must consider under federal law. For example, the types of compensatory mitigation measures that Stayton is likely to argue should have been considered in the Final SEIS, such as funding for replacement systems or for access to reserves of potable water, may not be brought up by either existing Plaintiff, due to Stayton's unique needs and resource base as a smaller, less affluent community. It is therefore far from guaranteed that either Plaintiff will make the same arguments as Stayton. Additionally, even to the extent Stayton and Salem share overlapping concerns, a remedy that satisfies Salem may not be acceptable to Stayton given their differing circumstances. For example, a turbidity limitation on the drawdown that renders the drawdown safe for Salem's facilities may not protect Stayton's facilities. Thus, Stayton's interests are not adequately represented by Marion County and Salem. *Cf. Kalbers*, 22 F.4th at 828 (a party seeking intervention must show that the representation of his interests may be inadequate).

**B. In the alternative, the Court should allow Stayton to permissively intervene.**

**1. Stayton's claims share common questions of law and fact with those already at issue in his action.**

As another affected entity located on the North Santiam River, Stayton's claims against Defendants share common questions of law and fact because they challenge the same unlawful actions by the Corps and its officers in publishing the Final SEIS with respect to Detroit Dam and Reservoir. Though each entity is in a unique position in terms of the exact harms it may face as a result of the deep drawdowns and may bring individualized arguments, many of Stayton's claims overlap with those brought by current Plaintiffs.



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

**2. As explained above, Stayton's motion is timely.**

For the same reasons as explained in section IV.A.1 above, Stayton's motion is timely. Stayton has demonstrated that it seeks to intervene at the earliest possible juncture after learning its rights may be impaired by the outcome of this litigation.

**3. Permitting Stayton to intervene will not prejudice or delay the adjudication of the original parties' rights.**

Permitting Stayton to intervene as a Plaintiff in this action will not prejudice or delay the adjudication of the original parties' rights. Intervention will not delay the proceedings because this motion, and the proposed Complaint, are filed before Defendant has Answered Marion County's or Salem's operative complaints.

Nor will the existing parties be prejudiced by intervention. Alongside this motion, Stayton has filed its proposed Complaint, outlining its specific claims. Each claim for relief arises out of the same or similar questions of law and fact, though specific to Stayton's unique position.

**4. Permitting Stayton to intervene will assist the Court in resolving the issues in these cases.**

Stayton's participation in this case will assist the Court in the resolution of these cases because it is prepared to highlight different aspects of the Final SEIS than the existing parties. Not all communities downstream of Detroit Reservoir are state capitals or large county governments; like Stayton, they are small, rural, and have interests that vary significantly from the existing Plaintiffs'. As a smaller, less-affluent entity than Salem or Marion County, Stayton's predicament shows the specific impacts that Defendants' planned actions have on smaller communities that rely upon the North Santiam river and will add needed perspective to the litigation of the federal laws that require that the agency adequately consider impacts on



PEARL LEGAL GROUP PC
529 SW THIRD AVE, SUITE 600
PORTLAND, OR 97204
T: 503-445-7101

downstream communities of all sizes. Its systems' vulnerability to turbidity means that it may make different or additional arguments, in particular with respect to the relief sought.

## V. CONCLUSION

For the reasons explained above, Stayton is entitled to intervene in these actions as a matter of right, or in the alternative, should be permitted to intervene.

DATED August 14, 2026.

Respectfully submitted,

PEARL LEGAL GROUP PC

s/ Jennifer L. Gates
Jennifer L. Gates, OSB No. 050578
jgates@pearllegalgroup.com
Heather C. Doherty, OSB No. 244304
htourgee@pearllegalgroup.com
529 SW Third Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 445-7101

*Counsel for Intervenor-Plaintiff City of Stayton*